**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PETER GARVEY, individually and on behalf of a class of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) ) | Case No. 1:18-cv-7919 |
| v. ) ) | |
| CITIZENS FOR RAUNER, INC., an Illinois corporation; and BRUCE RAUNER, an individual, ) ) ) ) | Honorable Jorge L. Alonso |
| *Defendants.* ) ) ) | Jury Trial Demanded |
| CITIZENS FOR RAUNER, INC., an Illinois corporation, ) ) ) | |
| *Third-Party Plaintiff*, ) ) | |
| v. ) ) | |
| VICTORY PHONES, LLC and THE STRATICS GROUP, INC. ) ) ) | |
| *Third-Party Defendants*. ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Peter Garvey, by and through his attorneys, individually and on behalf of a class of similarly situated individuals, brings this First Amended Class Action Complaint against Defendants Bruce Rauner ("Rauner") and the entity supporting his Illinois gubernatorial campaigns, Citizens for Rauner, Inc., an Illinois corporation ("Rauner Campaign") (Rauner and the Rauner Campaign are also collectively referred to herein as "Defendants"), to seek redress for Defendants' unlawful practice of making calls to cellphones using a prerecorded voice without prior express consent, and in order to recover damages and injunctive relief for the

claims identified below. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.  In an effort to promote Rauner's Illinois gubernatorial election campaigns, Defendants engaged in an especially invasive form of advertising: the transmission of prerecorded messages through unsolicited robocalls to the cellphones of individuals throughout Illinois, including Plaintiff.

2.  However, as set forth in more detail below, Defendants failed to obtain the called parties' prior express consent before calling them. By making these unsolicited robocalls to individuals' cellphones without the individuals' prior express consent, Defendants have violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq.*, as well as consumers' privacy rights.

3.  Defendants knew that they were prohibited by the TCPA from contacting consumers on their cellphones with automated and prerecorded voice calls without their prior express consent.

4.  Nevertheless, in a failed attempt to circumvent the TCPA, Defendants did just that by utilizing so-called "ringless voicemail"[1] technology to make prerecorded voice calls to Plaintiff and the other Class members promoting Rauner's gubernatorial services.

---

[1] The label "ringless" was self-servingly fabricated by companies that market this technology, and is simply false. It is common knowledge that every cellphone audibly alerts a consumer when a voicemail is received.

5.      Neither Plaintiff nor the Class members ever consented in writing, authorized, desired, or permitted Defendants to make the prerecorded voice calls alleged herein to their cellphones.

6.      By making such unauthorized prerecorded voice calls to Plaintiff's and the Class members' cellphones, Defendants caused Plaintiff and the Class members actual, concrete harm, including aggravation, nuisance, intrusion upon seclusion, and invasion of their privacy.

7.      Through this action, Plaintiff seeks redress for Defendants' violations of the TCPA and for willfully and knowingly violating Plaintiff's privacy rights and the rights of thousands of similarly situated Illinois residents.

8.      Plaintiff brings this case as a putative class action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of similarly situated individuals, as more fully defined below, who received calls to their cellphones made or caused to be made by Defendants in violation of the TCPA, and who are seeking monetary and injunctive relief.

## PARTIES

9.      Plaintiff is a natural person and a citizen of the State of Illinois, domiciled in Cook County, Illinois.

10.     Defendant Rauner is a natural person and a citizen of the State of Illinois, domiciled in Cook County, Illinois. Rauner is the former Governor of Illinois and he formed or caused to be formed and substantially funded Defendant Rauner Campaign for the purpose of supporting his 2014 and 2018 Illinois gubernatorial election campaigns.

11.     Upon information and belief, and as more fully alleged below, at all times relevant herein Defendant Rauner specifically, individually, and personally directed and

authorized all of the unlawful calls described herein and provided his own voice as the prerecorded voice used for the calls at issue.

12. Upon information and belief, Defendant Rauner was the central figure behind the unlawful prerecorded voice calls at issue herein, and he maintained effective control over the placement of such unlawful calls.

13. Defendant Rauner Campaign is an Illinois corporation formed for the sole purpose of supporting the gubernatorial candidacies of Defendant Rauner. The Rauner Campaign maintains its principal and registered offices Chicago, Cook County, Illinois.

## VENUE & JURISDICTION

14. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, specifically the TCPA, 47 U.S.C. § 227 *et seq.*

15. This Court has personal jurisdiction over Defendants because both Defendants are citizens of the State of Illinois.

16. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Defendants are residents of this District and a substantial part of the conduct giving rise to Plaintiff's claims occurred within this District.

## THE TCPA

17. The TCPA prohibits: (1) any person from calling a cellphone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

18. Congress enacted the TCPA to prevent unsolicited calls to consumers' cellphones. "Voluminous consumer complaints about abuses of telephone technology – for example,

4

computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19. Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive calling practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991).

20. When it passed the TCPA, Congress intended to provide consumers a choice as to how callers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ." *Id.* §§ 12-13

## FACTUAL ALLEGATIONS

### "Ringless Voicemails" are Calls Under the TCPA

21. The disingenuously named "ringless voicemail" technology was created and is presently being used by unscrupulous individuals and entities, including Defendants, in an attempt to circumvent the TCPA's clear restrictions.

22. However, so-called "ringless voicemails" are calls under the TCPA and Defendants are thus liable under to the TCPA for violating Plaintiff's and the Class members legal rights by utilizing such technology.

23. "Ringless voicemail" technology works by delivering artificial or prerecorded voice messages *en masse* to the voicemail boxes of cellphone subscribers.

24. However, calls made by utilizing this technology are not actually "ringless" since the artificial or prerecorded voice message that results triggers an audible notification to the cellphone subscriber once the message is received.

25. Further, the method by which the so-called "ringless voicemails" are transmitted to cellphones is essentially the same as the method used to transmit text messages to cellular phones.

26. This is significant because cellphone subscribers are entitled to the same consent-based protections for text messages as they are for voice calls to wireless numbers. *See, e.g., In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009).

27. "Ringless voicemail" calls, including the prerecorded voice calls at issue in this action, are delivered similarly to text messages by "establishing a direct Internet-based

6

computer-to-computer data connection to the respective voicemails systems of the cellular carriers. As part of the protocol for this data communication, subscribers' cellphone numbers are used to identify each voicemail box so that the pre-recorded voice messages are inserted into each voicemail box *en masse*."[2]

28. Consumers are powerless to block "ringless voicemails" from being transmitted to their phones. Thus, a consumer's voicemail box could be rendered useless by just a handful of companies using the "ringless voicemail" technology to market their goods and/or services.

29. The purpose of a "ringless voicemail" call is to communicate with or try to get into communication with a consumer through the consumer's cellphone.

30. The FCC has previously rejected the argument that technologies such as "ringless voicemails" calls are not regulated by the TCPA because they are not traditional "calls." Particularly, in the context of Internet-to-phone text messaging, which is essentially the same technology at issue in this case, the FCC has ruled:

> From the recipient's perspective, Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. Finding otherwise—that merely adding a domain to the telephone number means the number has not been "dialed"—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers.[3]

---

[2] Comments Opposing the Petition for Declaratory Ruling and Waiver by National Consumer Law Center, In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, DA 17-364 (FCC May 18, 2017) available at https://www.fcc.gov/ecfs/filing/105180243621422.
[3] See Rules & Regulations II, 30 FCC Rcd. at 8020.

**The Failed and Withdrawn Ringless Voicemail Petition to the FCC**

31. On January 9, 2017, a putative class action lawsuit under the TCPA was filed against TT of Pine Ridge, Inc., ("TT of Pine Ridge") a vehicle dealership located in Naples, Florida, styled *Mahoney v. TT of Pine Ridge, Inc.*, Case No. 9:17-cv-80029-DMM (S.D. Fla. 2017) ("*Mahoney*").

32. At issue in *Mahoney* was the use of a "ringless voicemail" platform by TT of Pine Ridge to promote its dealership's inventory and related services. (*See id.* at ECF No. 1).

33. On March 31, 2017, All About the Message, LLC, a distributor for The Stratics Group, Inc.'s ("Stratics")[4] "ringless voicemail" platform, filed a Petition for Declaratory Ruling with the FCC seeking a declaration that the TCPA does not apply to "ringless voicemails" (the "FCC RVM Petition").

34. The FCC RVM Petition appears to have been initiated and/or coordinated by TT of Pine Ridge, as a Motion for Stay pending resolution of the FCC RVM Petition was filed by TT of Pine Ridge in the *Mahoney* lawsuit on the same day. (*See id.* at Doc. 33).

35. The FCC RVM Petition received significant media attention and substantial opposition from members of Congress, State Attorney Generals, and consumer protection groups.

36. For example, several members of Congress wrote a letter to the Chairman of the FCC describing so-called "ringless voicemails" as "a clear-cut attempt at an end-run around legal and technological protections against spam and unwanted phone communications."[5]

---

[4] Stratics is also one of the third-party defendants in the present action.
[5] *See* Correspondence from Members of Congress to the Honorable Ajit Pai, Chairman, FCC (June 21, 2017) *available at* https://www.fcc.gov/ecfs/filing/1072811351675.

37. Similarly, the Attorneys General for Massachusetts, New York, and Kentucky filed an opposition to the FCC RVM Petition stating in pertinent part:

> Ringless voicemails are prerecorded calls within the meaning of the TCPA. All About the Message seeks to avoid this conclusion by stating that ringless voicemail "bypasses the wireless telephone and telephone subscriber altogether," and by narrowly construing its conduct to include only the delivery of the voicemail message to a server and not to the consumer. This is a distinction without a difference.[6]

38. Ultimately, on June 20, 2017, the FCC RVM Petition was withdrawn after a class-wide settlement was reached in *Mahoney*, and the FCC thus did not issue a ruling with respect to the petition.

## Defendants' Calls to Plaintiff and the Class Members

39. Defendants collectively undertook a misguided and illegal effort to solicit support for Rauner's gubernatorial candidacies by causing the mass transmission of ringless voicemail calls using a prerecorded voice to the cellphones of Plaintiff and the Class members.

40. Defendants' calls featured a prerecorded voice and were made on multiple occasions to the cellphone line paid for by Plaintiff. Said calls utilized Rauner's prerecorded voice and focused on his gubernatorial candidacy and the then upcoming election.

41. Plaintiff never requested information about the then upcoming election or candidate Rauner from Defendants and/or their agents. Defendants' attempt to advertise Rauner's gubernatorial services to voters, including Plaintiff and the Class members, through the use of unauthorized prerecorded voice calls amounts to a completely unsolicited advertisement for services.

---

[6] Comments Opposing the Petition for Declaratory Ruling and Waiver by Massachusetts, New York, and Kentucky, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278 (FCC June 2, 2017) *available* at https://www.fcc.gov/ecfs/filing/10602714924246 .

42. For instance, in March 2018 Plaintiff's cellphone received the following prerecorded voice call, recorded by Defendant Rauner himself with his own voice:

> "HI, THIS IS BRUCE RAUNER, I'M CALLIN' TO ASK FOR YOUR VOTE IN TUESDAY'S PRIMARY ELECTION. ILLINOIS IS WORTH FIGHTIN' FOR AND WITH REAL REFORM TOGETHER WE CAN BRING BACK ILLINOIS AND PROVIDE THE FUTURE OUR CHILDREN DESERVE. PLEASE JOIN ME IN THE FIGHT AGAINST MIKE MADIGAN AND HIS SPECIAL INTEREST ALLIES. I'M ASKIN' FOR YOUR VOTE ON TUESDAY, MARCH 20. PAID FOR BY CITIZENS FOR RAUNER."

43. Plaintiff received three such calls to his cellphone that featured the prerecorded voice of Defendant Rauner himself.

44. Each of these three prerecorded voice calls originated from telephone number 312.583.0704, and said calls were made on or about March 18, 19, and 20 of 2018.

45. At all times relevant herein, Defendants have used, owned, operated, and/or controlled telephone number 312.583.0704 to make prerecorded voice calls to individuals' cellphones, including Plaintiff's and the Class members' cellphones.

46. During each of the three calls to Plaintiff, Defendants delivered a prerecorded voice message lasting approximately 30 seconds to Plaintiff's cellphone that promoted Rauner's Illinois gubernatorial candidacy.

47. Plaintiff never provided prior express consent for Defendants to place—or cause to be placed—calls to his cellphone using a prerecorded voice.

48. Plaintiff is the subscriber and/or sole user of the cellphone number that received the subject calls.

49. Defendants' unsolicited, prerecorded voice calls caused Plaintiff and the Class members actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' unsolicited prerecorded voice calls also

10

inconvenienced Plaintiff and the Class members and caused disruption to daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

### **Defendant Rauner Campaign is Liable for the Calls**

50. At all times relevant herein, the Rauner Campaign has been the sole Candidate Political Committee registered with the Illinois State Board of Elections in connection with Rauner's candidacy for the public office of governor of the State of Illinois. The Rauner Campaign's stated purpose is to support the gubernatorial candidacy of Bruce Rauner.

51. At all times relevant herein, the Rauner Campaign on behalf of both itself and Rauner, paid one or more vendors to make the prerecorded voice calls to the cellphones of Plaintiff and the Class members.

### **Defendant Rauner is Liable for the Calls**

52. At all times relevant herein Rauner directly and personally participated in the prerecorded voice calling campaign at issue (which calling campaign was done solely in support of his personal political candidacy) by, among other things, using his own voice as the prerecorded voice used to make calls to the cellphones of Plaintiff and the Class members.

53. Defendant Rauner personally directed placement of the calls at issue so that he could directly communicate with the called parties and deliver his promotional message. Rauner personally recorded his own voice for the calls and directed the Rauner Campaign and/or its agents to conduct the calling campaigns at issue.

54. At all times relevant herein Rauner knew that his own prerecorded voice would be used for calls in support of his gubernatorial candidacy, and he consented to and facilitated the

11

prerecorded voice calling strategy implemented by his registered Candidate Political Committee, the Rauner Campaign, and its vendors.

55. At all times relevant herein Rauner's campaign strategy to make, or cause to be made, prerecorded voice calls to the cellphones of Plaintiff and the Class members was done for the purpose of personally benefitting Rauner, individually, in connection with his gubernatorial candidacy. Defendant Rauner sought to benefit himself by providing his recorded voice to the unlawful calls at issue.

56. At all times relevant herein Rauner's personal participation in all actions taken by the Rauner Campaign, including the prerecorded voice calling campaign at issue, included personally funding through campaign contributions, in whole or in part, all actions at issue herein taken by Defendant Rauner Campaign. Rauner personally donated at least $95,276,000 to The Rauner Campaign, and he was the Rauner Campaign's largest campaign donor by a margin of more than $59,000,000.

57. Rauner personally authorized and had direct personal participation in the prerecorded voice calls at issue, and the calls at issue were made for Rauner's personal benefit: to support his personal campaign for political office.

### Defendants' Collective Conduct in Violation of the TCPA

58. Defendants collectively made or caused to be made the prerecorded voice calls at issue to Plaintiff and the Class members' respective cellphones without prior express consent, as part of their political campaign efforts for the personal benefit of Rauner.

59. Defendants collectively made or caused to be made the same or substantially the same prerecorded voice calls *en masse* to tens of thousands of unique cellphones belonging to Plaintiff and the Class members.

12

60. Plaintiff and the Class members did not provide prior express consent for either Rauner or the Rauner Campaign to call their cellphones using a prerecorded voice.

**Class Allegations**

61. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of himself and a proposed class (the "Class") defined as follows:

> All persons within the United States who, within the applicable limitations period, were sent a prerecorded or artificial voice call from or on behalf of either Defendants or their agents to either: (1) a cellular telephone subscribed to by said person, or (2) a cellular telephone for which said person is the number's customary user, where such calls were made without the recipient's prior express consent.

62. Plaintiff represents and is a member of the Class. Excluded from the Class are any members of the judiciary or their staff assigned to preside over this matter; any officer, director, or employee of Defendants; and any immediate family members of such staff, officers, directors, or employees.

63. Upon information and belief there are in excess of 35,000 unique members of the Class. As such, joinder of all Class members is impracticable. Although the exact number of Class members is presently unknown, the number and identity of Class members can be readily determined through the records of Defendants and their agents and/or contractors, including those of third-party defendants Victory Phones, LLC and The Stratics Group, Inc. Identification of the Class members is a matter capable of ministerial determination from said records.

64. The disposition of the numerous claims of these Class members in a single class will provide substantial benefits to all parties and to the Court in avoiding a multiplicity of identical suits.

65. Defendants have acted or failed to act on grounds that apply generally to the Class, so that the final injunctive relief is appropriate with respect to the Class as a whole.

66. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common questions include:

    (a) The manner in which Defendants compiled and called the cellphones of Plaintiff and the Class members;

    (b) Whether Defendants used a prerecorded voice in making or causing the calls at issue to be made;

    (c) Whether Defendants received prior express consent from Plaintiff and Class members prior to making or causing the prerecorded voice calls to be made to the cellphones of Plaintiff and Class members;

    (d) Whether any purported consent received by Defendants complied with the requirements set forth by the Federal Communications Commission or the TCPA, including provisions against unsolicited political marketing;

    (e) Whether Defendants' conduct constitutes a violation of the TCPA;

    (f) Whether Defendants acted willfully and/or knowingly in violation of the TCPA;

    (g) Whether Defendants should be enjoined from engaging in such conduct in the future;

    (h) Whether Defendants are liable for damages to Plaintiff and the Class, and the amount of all such damages.

67. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual allegations and legal theories. Plaintiff and the Class members have similarly received prerecorded voice calls from Defendants to their cellphones, and Plaintiff and the Class members suffered the same harm arising from Defendants' legal violations as identified in the claim set forth below.

68. Plaintiff's and the Class members' claims flow, in each instance, from a common nucleus of operative facts: Defendants' unlawful conduct and legal violations as identified in the claim set forth below.

69. Plaintiff is an adequate representative of the Class because his interests do not conflict with and are not antagonistic to the interests of the Class members he seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the Class.

70. Plaintiff has retained competent and experienced counsel, with substantial experience prosecuting complex litigation.

71. Plaintiff and the Class members have all suffered and will continue to suffer substantial harm and damages due to Defendants' conduct. A class action is superior to other methods for the fair and efficient adjudication of the subject controversy. Absent a class action, most Class members likely will find the cost of litigating their individual claims to be prohibitive and will have no effective remedy at all. Absent a class action, Class members will continue to sustain damages, and Defendants' misconduct will proceed without remedy.

72. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Additionally, Defendants have acted, and failed to act, on grounds generally applicable to Plaintiff and the Class, requiring court imposition of uniform relief to ensure compatible standards of conduct toward Plaintiff and the Class.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**On behalf of Plaintiff and the Class**

73. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

74. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service ….." 47 U.S.C. § 227(b)(1)(A)(iii).

75. Defendants placed or directed the placement of prerecorded voice calls to the cellphone numbers of Plaintiff and the Class members.

76. These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cellphones of Plaintiff and the Class members when said calls were made.

77. Defendants intentionally created, authored the script of, and recorded such prerecorded voice calls in a manner so as to represent to third parties, such as Plaintiff and the Class members, that such calls were made and funded by Defendants.

78. At all times relevant herein, Defendants, both individually and collectively, retained the authority to control the manner and/or means of placing such prerecorded voice calls to Plaintiff and the Class members.

79. Defendants created, authored the script of, and recorded such prerecorded voice calls knowing that they would be placed to third parties, such as Plaintiff and the Class members, as prerecorded voice calls to cellphones.

80. Defendants created, authored the script of, recorded and directed the placement of such prerecorded voice calls to cellphones for the specific purpose of promoting Defendant Rauner's personal political candidacy for governor of the State of Illinois.

81. Due to Defendants' representations made in these prerecorded voice calls (including Rauner's prerecorded statement in such calls "Paid for by Citizens for Rauner")

Plaintiff and the other members of the Class believed that such calls had been placed by Defendants.

82. Though Defendants knew or were made aware of the fact that these prerecorded voice calls had been placed to Plaintiff and the other Class members, they did nothing to stop their telemarketing campaign, and instead accepted the telemarketing campaign's benefits, including increased publicity for Rauner's personal political candidacy.

83. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cellphones of Plaintiff and the other members of the Class without their prior express consent.

84. As a result of Defendants' conduct in violation of the TCPA, Plaintiff and the other members of the Class have had their privacy rights violated, have suffered actual and statutory damages, and, pursuant to TCPA Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA. Plaintiff and the Class members are further entitled to an injunction against future prerecorded voice calls by Defendants.

85. To the extent Defendants knew or should have known that Plaintiff and the Class members did not provide prior express consent to be sent the prerecorded voice calls at issue, the Court should, pursuant to TCPA Section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Class members, and award $1,500 in statutory damages for each and every violation by Defendants.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Peter Garvey, individually and on behalf of the Class, requests that the Court enter an order and judgment as follows:

A. Certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

B. Awarding of actual, statutory, and, if appropriate, treble damages;

C. Requiring Defendants and their agents, contractors, and affiliates to cease all calls to cellphones utilizing an artificial or prerecorded voice without prior express written consent, and otherwise protecting the interests of the Class;

D. Awarding reasonable attorney's fees and costs; and

E. Awarding such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Pursuant to Rule 38(b), Plaintiff hereby demands trial by jury on all claims and issues so triable.

Dated: July 2, 2019

PETER GARVEY, individually and on behalf of a class of similarly situated individuals

By: */s/ John Sawin*
John Sawin
SAWIN LAW LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
312.853.2490
jsawin@sawinlawyers.com

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on July 2, 2019, I electronically filed the foregoing *Plaintiff's First Amended Class Action Complaint and Jury Demand* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ John Sawin*