**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PETER GARVEY, individually and on behalf of a class of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) ) | Case No. 1:18-cv-7919 |
| v. ) ) | Honorable Jorge L. Alonso |
| CITIZENS FOR RAUNER, INC., an Illinois corporation; and BRUCE RAUNER, an individual ) ) ) ) | Magistrate Judge M. David Weisman |
| *Defendant*. ) ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR ATTORNEY'S FEES, EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARD**

**I.     INTRODUCTION**

On May 14, 2021, after more than three years of contentious litigation, this Court preliminarily approved the Parties' proposed Class Action Settlement Agreement and Release[1], bringing to a close over three years of litigation in this action brought against Illinois' former governor, Bruce Rauner ("Rauner"), and his political candidate committee, Citizens for Rauner, Inc. (the "Rauner Campaign"), under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Notice has been distributed and many Settlement Class Members have filed claims. In advance of the Final Approval Hearing, Plaintiff now moves for approval of an incentive award and an award of attorney's fees and expenses for Class Counsel.

The Class Action Settlement that Class Counsel achieved in this case is an excellent result for the Settlement Class Members. The Settlement Agreement creates a one million dollar

---
[1] Unless otherwise indicated, capitalized terms herein have the same meaning as those terms are defined in the Parties' Class Action Settlement Agreement and Release, attached hereto as **Exhibit A**.

($1,000,000) non-reversionary all cash common fund for the benefit of 38,216 individuals to whom Defendants allegedly made calls and delivered pre-recorded messages via voicemail to cellphones, with each individual Settlement Class Member receiving a pro rata share following subtractions for the costs of notice and administration, court-awarded attorney's fees and expenses, and the incentive award to Plaintiff.

To date, the Settlement has been met with overwhelming approval from Settlement Class Members. Notice of the Settlement commenced on June 14, 2021 in accordance with the Court's Preliminary Approval Order. As of July 23, 2021, with more than two weeks remaining until the August 11, 2021 Claim Form Deadline and Opt-Out and Objection Deadline, the Settlement Administrator reports receiving 5,950 claims from the Settlement Class of 38,216 individuals. This is a **15.57%** response rate to date for this TCPA case.[2] Also, the Settlement Administrator has not received any opt outs or objections through the last reported date of July 23, 2021.

With this motion Class Counsel requests a fee award of $333,333.33, which represents 33.333% of the total $1,000,000 Settlement Fund. Both Class Counsel and the Class Representative, Plaintiff Garvey, devoted significant time and effort to the prosecution of the Settlement Class Members' claims over the past three years in the face of complex defenses and significant risks. Plaintiff and Class Counsel's efforts have yielded an excellent benefit for the 38,216 Settlement Class Members. The requested attorney's fees and costs and incentive award are amply justified in light of the investment of time and effort, the inherent risks of this type of litigation, and the excellent results obtained for the Settlement Class Members. As such, Plaintiff and Class Counsel respectfully request that the Court approve the requested attorney's fees of $333,333.33, plus litigation expenses incurred in the amount of $6,685.06, and an incentive award of $10,000.00 for Class Representative Garvey.

---

[2] However, the claims have not yet been evaluated for deficiencies or duplicates.

## II. BACKGROUND

### A. History of the Litigation and Class Counsel's Efforts

Plaintiff, through Class Counsel, initially filed this putative class action against the Rauner Campaign in the Circuit Court of Cook County, Illinois on March 23, 2018. The Rauner Campaign answered Plaintiff's complaint May 17, 2018, and written and third-party discovery thereafter commenced concerning both individual merits and class-certification related issues. Plaintiff, through Class Counsel, served numerous subpoenas upon third-parties, and ultimately litigated the scope and enforceability of a subpoena for records to then non-party Victory Phones, LLC in Kent County, Michigan's 17th District Court. As a result of this written and third-party discovery, Plaintiff obtained highly relevant electronically stored information, including call records regarding the Rauner Campaign's advertising campaign at issue.

While this litigation was still pending in the Circuit Court of Cook County, the Rauner Campaign filed a Third-Party Complaint against Victory Phones LLC and The Stratics Group, Inc. The Stratics Group, Inc. then timely removed this action to this Court. Thereafter, on July 2, 2019, Plaintiff filed a First Amended Class Action Complaint, which added Rauner as an individual Defendant.

On October 20, 2020, Defendants filed a Joint Rule 12(b)(1) Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings, arguing for dismissal of Plaintiff's claims based on the Supreme Court's recent decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020). Plaintiff filed a Memorandum in Opposition to that motion, and this fully briefed motion was pending before the Court when the Parties initially advised the Court of the proposed Class Settlement.

Class Counsel has devoted substantial time and resources to investigating, litigating, and resolving this action for the benefit of the Settlement Class. (See Declaration of John Sawin, attached hereto as **Exhibit B**). Class Counsel spent significant time communicating with Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint and amended complaint, engaging in discovery, working with a consulting expert witness, briefing multiple potentially dispositive motions, reviewing documents, negotiating the Settlement Agreement and preparing the Settlement-related documents and filings, and supervising the Settlement claims administration process. In sum, Class Counsel developed and prosecuted complex claims and obtained an excellent recovery for the Settlement Class in the face of strong opposition by Defendants.

B.   **Settlement Discussions**

Plaintiff's initial settlement demand in this action was not made until approximately ten months into the litigation–in January 2019–when Plaintiff initially proposed a preliminary framework for potential classwide settlement of the claims. Those discussions did not gain any traction at that time, so the litigation continued and Plaintiff thereafter obtained leave to add Rauner as an individual Defendant. The Parties thereafter engaged in informal settlement discussions at various junctures in the litigation, including September 2019, January 2020, and August 2020. However, it was not until February 2021–after substantial legal briefing on the complex and evolving legal issues involved in this action had taken place–that the Parties' settlement discussions gained momentum. At that time the Parties, through their respective counsel, articulated their respective positions on each of the key legal issues relating to liability, class certification and damages exposure, discussed their competing views on various issues, including the relief to which the Settlement Class was potentially entitled and the prospects of

4

class certification, and eventually began exchanging counter-proposals. The Parties' negotiations were at all times highly adversarial and at arm's length.

### C. Settlement Agreement and Preliminary Approval

The Parties thereafter finalized their understanding by executing a Settlement Agreement dated May 6, 2021, which the Court preliminary approved on May 14, 2021. See ECF Doc. 135-1 (the "Agreement"), and ECF Doc. 138 (Preliminary Approval Order). Pursuant to the Agreement, Defendants have agreed to pay, on a non-reversionary basis, cash in the amount of $1,000,000.00 to create the Settlement Fund for the benefit of Settlement Class Members. The Settlement Fund will be used to pay all Settlement costs, including without limitation the Settlement Awards, Notice and Administrative Costs, any Attorney's Fee Award and an incentive/service award payment to Class Representative Garvey, and will be in full satisfaction of all of the Defendants' monetary obligations under the Settlement and Agreement. After such Settlement Costs have been paid from the Settlement Fund, each Settlement Class Member who submits a valid Claim Form will receive a pro rata share of the remainder of the Settlement Fund. Regardless of the number of Claim Forms submitted, no portion of the Settlement Fund shall be returned or refunded to Defendants.

### D. Class Counsel's Continuing Efforts Since Preliminary Approval.

Since preliminary approval Class Counsel has continued to invest significant time and effort towards administering the Settlement effectively. The Parties selected KCC Class Action Services, LLC ("KCC") as Settlement Administrator, and Class Counsel has been actively involved in supervising and managing all aspects of KCC's administration of the notice program. Prior to and since preliminary approval Class Counsel has regularly communicated with KCC to ensure that accurate and timely notice of the Settlement was provided to the Settlement Class

Members, and that the Settlement Website was accurate and operational. To that end, Class Counsel reviewed the language and content of the Settlement Website, has responded to numerous Settlement Class Members who contacted Class Counsel directly, and prepared the instant motion. Class Counsel will continue to devote his time and effort as the settlement administration continues, as well as appear at the final approval hearing, and continue to respond to ongoing inquiries from Settlement Class Members.

### III.    LEGAL STANDARD FOR ATTORNEYS FEES

Federal Rule of Civil Procedure 23 provides that"[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit recognizes "two approaches used to calculate attorneys' fees: the lodestar method . . . and the percentage-of-recovery method . . ." *Wright v. Nationstar Mortg. LLC*, No. 14-cv-10457, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562 (7th Cir. 1994) (hereinafter "*Florin I*")). Generally, "a district judge has discretion to use either method, depending on the particular circumstances of the case." *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998).

In TCPA class actions like this one, where the defendant creates a common fund that is distributed in full, the percentage-of-the-fund method is "the normal practice," because "such an approach is more efficient for the court and more likely to yield an accurate approximation of the market rate." *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 794–95 (N.D. Ill. 2015); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015) ("The Court agrees with [class] counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method . . . because fee arrangements based on the lodestar method

6

require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of [many] million lightly-injured plaintiffs likely would not be interested in doing."); *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-cv-7410, 1995 WL 765266, *9 (N.D. Ill. Dec. 6, 1995) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class") (collecting cases). Moreover, the percentage-of-the-fund method is the best method for recreating the market for TCPA attorneys, because TCPA attorneys generally work on contingency and are not paid by lodestar.

Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found: The percentage method is bereft of largely judgmental and time wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation. *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); see also *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), aff'd, 160 F.3d 361 (7th Cir. 1998).

Here, Class Counsel's requested fee award is $333,333.33, which represents 33.333% of the Settlement Fund. As explained in more detail below, this fee award is within the market rate for class settlements of this size (as determined using the formula this District has adopted), is

within the range of fees approved in other similar TCPA class actions, and is fair and reasonable in light of the work performed and the recovery secured on behalf of the Settlement Class.

IV. **ARGUMENT**

    A. **The Court Should Calculate Fees as a Percentage of the Fund**

Courts in this District often look to *In re Synthroid Marketing Litig.* ("Synthroid II"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("In re Capital One"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

    B. **Class Counsel's Request Falls Within the Market Rate**

The Court is also tasked with determining what percentage of the Settlement Fund is appropriately allocated as attorney's fees. The Seventh Circuit has held that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, the court held that there should be a "presumption" that fees in any given settlement should not "exceed a third <u>or at most a **_half_**</u> of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)

(emphasis added). Although *Pearson* establishes that courts must also consider the value of the settlement exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorney's fees in consumer class actions.

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $333,333.33 in attorney's fees. This request amounts to 33.333% of the entire $1,000,000 Settlement Fund recovered by Class Counsel. The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other factors are relevant, as well, including the risk that counsel undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. Each of these factors supports the requested attorney's fee.

> **1. Class Counsel's retainer agreement with Plaintiff contemplates the requested fee award.**

The first factor courts consider in determining the percentage of the fund that the class and class counsel would have agreed to *ex ante* is the actual agreed-upon amount in class counsel's retainer agreement. *Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719). Here, Class Counsel's retainer agreement with Plaintiff provides for a contingency fee of 40% of the total recovery, plus reimbursement of all costs and expenses. (**Ex. B**, Sawin Dec.). Given the $1,000,000 Settlement Fund here, Plaintiff's agreement with Class Counsel contemplates a fee award of $400,000, in addition to the recovery of all costs and expenses. Here, the attorney's fee percentage actually sought (33.333% of the Settlement Fund) is within the range of fees previously awarded in the Seventh Circuit. See, e.g., *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent"). And

9

the retainer agreement's percentage is actually <u>more</u> than what Class Counsel is seeking herein, as Class Counsel's requested fee award amounts to 33.333% of the Settlement Fund. Accordingly, the retainer agreement supports a finding that the Settlement Class Members would have agreed to Class Counsel's requested fee in an *ex ante* negotiation. See *Capital One*, 80 F. Supp. 3d at 796; see also *Kolinek*, 311 F.R.D. at 500.

### 2. The Requested Fee Reflects the Fees Awarded in Other Settlements

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. See *Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses).

Class Counsel's request for 33.333% of the Settlement Fund is thus reflective of the typical fees awarded in similar cases and represents the post-*Pearson* market price. This is reflected in the following fees approved by judges in this District in TCPA cases since Pearson:

    a.    36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.);

    b.    38% of total fund: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015);

    c.    36% of the fund minus notice/admin costs: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.);

      d.      33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.);

      e.      33% of total fund or 35.4% of the fund after notice costs. *Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016) (Dkt. 379 at 5) (Lee, J.)

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *E.g. Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15- 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs). Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

      **C.**      **Other Factors Supports the Requested Fee**

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the excellent result achieved for the benefit of the Settlement Class in this case, and considering the risk of no recovery and the substantial resources expended over the years that this litigation has been pending, Class Counsel respectfully submits that the requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

      **1.**      **Risk of Loss or Non-Payment**

There were numerous legal uncertainties associated with this litigation that posed substantial risk of non-recovery. First, one of the Parties' principal disagreements in this action

concerns whether ringless voicemails are even subject to the TCPA. Defendants have consistently taken the position that they are not. This fundamental issue created legal uncertainty for Plaintiff's claims from this action's inception.

Second, as a result of the Supreme Court's 2020 decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020), there was legal uncertainty in this action concerning Defendants' liability under the TCPA during the time period at issue. This fully briefed motion was pending before the Court at the time the Parties reached the Class Settlement.

Third, the Rauner Campaign is an Illinois not-for-profit corporation that was registered as an Illinois political candidate committee to support the Defendant Rauner's Illinois gubernatorial campaigns. Rauner lost his 2018 bid for reelection as Illinois' governor, and is no longer a candidate for political office. As such, while the Rauner Campaign continued to exist as an entity, it has not been active since 2018, and its limited remaining assets continued to dwindle as this litigation proceeded. Accordingly, Plaintiff's claims against the Rauner Campaign (which was the sole Defendant for the first 14 months of this litigation) have always presented a financial risk that any victory against it would be merely a pyrrhic victory, as the Rauner Campaign would ultimately have insufficient assets available to satisfy any judgment obtained.

Fourth, there was the inherent risk that the Court could ultimately grant summary judgment in favor of Rauner on the issue of his vicarious liability for the calls at issue. If this litigation were to proceed and the Court were to grant summary judgment in Rauner's favor, then the Rauner Campaign would be the sole remaining defendant. As noted above, that entity is no longer an active entity, its limited remaining assets continue to dwindle, and it would almost certainly be unable to satisfy a class-wide judgment against it.

Fifth, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. Defendants have maintained, among other things, that individual issues among Settlement Class Members would predominate and preclude class certification. Plaintiff disagrees but recognizes that this was an inherent risk of this TCPA claim against a political campaign and elected official.

Finally, even if Plaintiff were to obtain class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal. As such, throughout this action, Class Counsel faced substantial risk that he would receive no compensation despite investing the substantial time and resources necessary to adequately prosecute this action. This risk further supports the requested fee award, as "[c]ontingent fees compensate lawyers for the risk of nonpayment" and "[t]he greater the risk of walking away empty-hand the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions,* Inc., 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). In light of the considerable risk undertaken by Class Counsel in prosecuting this action against Illinois' former governor and his political campaign on a purely contingent fee basis, the requested fee award is reasonable and should be granted. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% of fund in TCPA class settlement).

### 2. Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through contested motion practice, party and third-party discovery, and adversarial negotiations to achieve a $1,000,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. The proposed Settlement was

13

reached after three years of litigation and was informed by Class Counsel's thorough review and analysis. Given the substantial settlement fund obtained for the Settlement Class, Class Counsel respectfully submits that his experience and the quality and amount of work invested in this action for the benefit of the Settlement Class supports the requested fee award.

### 3. Stakes of the Case

The stakes of the case further support the requested fee award. This case involves 38,216 Settlement Class Members who allegedly received unlawful calls from Defendants. The amount that each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus such individuals are unlikely to file lawsuits on their own behalf. A class action is realistically the only way that most individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they each likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### C. The Requested Incentive Award for Plaintiff Garvey Should be Approved

Class Counsel also respectfully requests that the Court grant a service/incentive award of $10,000 to Plaintiff Peter Garvey for his efforts on behalf of the Settlement Class. Incentive awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. See *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Although no award was promised to Plaintiff prior to or during the

litigation, Plaintiff nonetheless contributed his time and effort in pursuing his own TCPA claims and serving as a representative on behalf of the Settlement Class Members—exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action.

Moreover, agreeing to serve as class representative meant that Plaintiff publicly put his name on this litigation, subjecting himself to "scrutiny and attention," which by itself "is certainly worthy of some type of remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600–01 (N.D. Ill. 2011).The amount requested is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g.*, *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement).

### D. The Court Should Also Award Class Counsel's Reasonable Litigation Expenses Incurred In Prosecuting This Litigation.

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of reasonable litigation costs and expenses. *Beesley v. Int'l Paper Co.*, 06-cv-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). Class Counsel incurred reasonable litigation expenses of $6,685.06. (**Ex. B**, Sawin Dec.)

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court approve Class Counsel's requested attorney's fee award of $333,333.33; award Class Counsel reasonable litigation expenses of $6,685.06; approve the requested incentive award of $10,000 to Plaintiff Peter Garvey; and award such other and further relief the Court deems equitable and just.

Dated: July 28, 2021    Respectfully submitted,

PETER GARVEY individually and on behalf of a class of similarly situated individuals

By: */s/ John Sawin*
    Plaintiff's Attorney

John Sawin (IL 6227112)
SAWIN LAW LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
312.853.2490
jsawin@sawinlawyers.com
*Counsel for Plaintiff and
the Settlement Class*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on July 28, 2021 I electronically filed the foregoing *Plaintiff's Unopposed Motion for Attorney's Fees, Expenses, and Class Representative Incentive Award* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ John Sawin*