**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER GARVEY, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:18-cv-7919 |
| v. | ) ) | Honorable Jorge L. Alonso |
| CITIZENS FOR RAUNER, INC., an Illinois corporation; and BRUCE RAUNER, an individual | ) ) ) ) | Magistrate Judge M. David Weisman |
| *Defendant*. | ) ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I.      **INTRODUCTION**

Plaintiff respectfully requests that this Court grant final approval of the Parties'

Settlement.[1] By any measure, the Settlement is an excellent result, as it provides substantial

monetary relief to the Settlement Class of approximately 38,000 individuals. The Settlement

must also be measured against the very real possibility that the Settlement Class Members would

otherwise obtain no recourse for Defendants' alleged violations of the Telephone Consumer

Protection Act (the "TCPA"), 47 U.S.C. § 227 et seq. Success in this action was far from

assured, and the Settlement brings meaningful relief to more than 1,500 individuals, as well as

certainty and closure to what has been—and likely would continue to be—contentious litigation.

The reaction of the Settlement Class reflects this excellent result.  More than 9,000

unique claims were submitted, which translates to approximately 25% of the size of the

settlement class and is a stellar result by any measure.  Further, none of the Settlement Class

Members have chosen to exclude themselves, and none have submitted objections.[2] Also, none

of the Settlement Class Members have expressed an intent to appear at the Final Approval

Hearing. Accordingly, for the reasons set forth below, Plaintiff respectfully requests that the

Court grant final approval of the Settlement, and approve Plaintiff's unopposed request for

attorney's fees, expenses, and a class representative incentive award [Dkt. 139].

---

[1] Unless otherwise indicated, capitalized terms herein have the same meaning as those terms are defined in the Class Action Settlement Agreement and Release, which is Exhibit A to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval" Dkt. 135).

[2] The Settlement Administrator, KCC Class Action Services LLC, is still reviewing Approximately 7,500 of the claims, but has conclusively determined that another approximately 1,500 claims are valid. The remainder of the claims are duplicates or were filed late.  *See infra* at 7.  KCC will submit a supplemental affidavit once it has completed its review.

II.     **BACKGROUND**

Plaintiff initially filed this putative class action against the Rauner Campaign in the Circuit Court of Cook County, Illinois on March 23, 2018. The Rauner Campaign answered Plaintiff's complaint May 17, 2018, and written and third-party discovery thereafter commenced concerning both individual merits and class-certification related issues. As a result of this written and third-party discovery, Plaintiff obtained electronically stored information, including call records regarding the Rauner Campaign's advertising campaign at issue.

While this litigation was still pending in the Circuit Court of Cook County, the Rauner Campaign filed a Third-Party Complaint against Victory Phones LLC and The Stratics Group, Inc. on October 22, 2018. The Stratics Group, Inc. then timely removed this action to this Court on November 30, 2018. Thereafter, on July 2, 2019, Plaintiff filed a First Amended Class Action Complaint, which added Rauner as a Defendant. Defendant Rauner thereafter filed a Rule 12(b)(6) Motion to Dismiss [Dkt. 52], and the Third-Party Defendants each filed Rule 12(b)(6) Motions to Dismiss the Rauner Campaign's First Amended Third-Party Complaint against them [Dkts. 64 & 66]. On September 3, 2020, this Court denied Rauner's Motion to Dismiss and granted Third-Party Defendants' respective Motions to Dismiss. As a result, Third-Party Defendants are no longer parties to this action.

On October 20, 2020, Defendants filed a Joint Rule 12(b)(1) Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings [Dkts. 110 & 111], arguing for dismissal of Plaintiff's claims based on the Supreme Court's then recent decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020). Plaintiff filed a Memorandum in Opposition to that motion [Dkt. 121], and this fully briefed motion was pending before the Court when the Parties first advised the Court of the Settlement set forth herein, obviating the need for a ruling on Defendants' then pending motion to dismiss.

2

The considerable time and resources that Plaintiff and his counsel have invested in this action afforded them the opportunity, in advance of ever discussing settlement with Defendants, to meaningfully assess the strength of the class claims and the risks posed by continued litigation.

III.     **SETTLEMENT TERMS**

The Agreement contains the following key terms:

A.     **Settlement Class Definition.**

The proposed Settlement that the Court preliminarily approved entails certification of a nationwide Settlement Class defined as follows:

> All persons and entities throughout the United States (1) to whom Defendants placed or caused to be placed one or more telephone calls or ringless voicemail messages; (2) directed to a number assigned to a cellular telephone service; (3) using an automatic telephone dialing system, or an artificial or prerecorded voice; (4) from March 23, 2014 to the date the Court enters the Preliminary Approval Order. Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family, any counsel who has filed an appearance on behalf of any Party to the Action, and all persons who are validly excluded from the Settlement Class. [Agreement, p. 8].

B.     **Monetary Relief.**

Defendants have agreed to pay, on a non-reversionary basis, cash in the amount of one million dollars ($1,000,000) to create the Settlement Fund for the benefit of Plaintiff and the Settlement Class Members. The Settlement Fund will be used to pay all costs and litigation expenses incurred in this action, including but not limited to: (i) any award of attorney's fees, costs, and expenses to Class Counsel approved by the Court; (ii) any incentive/service award to Plaintiff approved by the Court; (iii) all costs of printing, providing and/or publishing notice and claim forms to persons in the Settlement Class; (iv) all costs of administering the Settlement, including but not limited to identifying Settlement Class Members, the cost of printing and mailing Settlement Awards and other payments, and the cost of maintaining the Settlement

Website; (v) the fees, expenses, and all other costs of the Class Administrator, including any

taxes and tax- related expenses incurred by or in connection with the creation of the Settlement

Fund; and (vi) the costs associated with preparing and serving the CAFA Notice (all of which are

collectively the "Settlement Costs"). [Agreement, p. 9].

Each Settlement Class Member who timely submitted an Approved Claim Form—either

online or by U.S. Mail—is entitled to receive a *pro rata* share of the Settlement Fund after

Settlement Costs are deducted. [Agreement, pp. 19-20]. Regardless of the number of Approved

Claim Forms submitted, no portion of the Settlement Fund shall be returned or refunded to

Defendants. [Agreement, pp. 20-21].

### C. Notice and Settlement Administration Costs.

In accordance with the Court's Preliminary Approval Order, Defendants timely advanced

the amounts necessary to pay for the Notice Program and settlement administration, as

determined and requested by the court appointed Class Administrator, KCC Class Action

Services LLC ("KCC"). Per the Agreement, Defendants have further agreed to pay the balance

of the Settlement Fund into the Escrow Account by or before the Funding Date.

### D. Opt-Out and Objection Rights.

Any Settlement Class Member who intended to object or opt out of the Settlement was

required to do so on or before the August 11, 2021 "Opt-Out and Objection Deadline.". [Dkt.

138]. Notably, no Settlement Class Member either objected to the Settlement or excluded

themself from the Settlement.

### E. Attorney's Fees and Costs, And Incentive Award.

In accordance with the Preliminary Approval Order [Dkt. 138], on July 28, 2021 Class

Counsel timely filed an Unopposed Motion for Attorney's Fees, Expenses, and Class

Representative Incentive Award [Dkt. 139] to be paid from the Settlement Fund pursuant to

applicable law, and from no other source. Plaintiff's motion sought an incentive award payment

to Plaintiff of $10,000 (in addition to any *pro rata* distribution he may receive as a Settlement

Class Member) for the time and effort he has invested in this action, and for the benefits that his

efforts have provided to the Settlement Class. As more fully described below, Plaintiff's motion

further requested a fee award for Class Counsel of $333,333.33, which represents 33.333% of the

total $1,000,000 Settlement Fund, plus reimbursement of litigation expenses incurred in the

amount of $6,685.06.

## IV.    ARGUMENT

The amended Fed. R. Civ. P. 23(e) calls for front-loaded scrutiny of a proposed

settlement so that any issues are identified before notice goes out to the class. That step has

already occurred. [Dkt. 138, the Preliminary Approval Order]. With this motion, Plaintiff

respectfully requests that the Court take the second and final step in the process by granting final

approval of the Settlement. Final approval is warranted because the Class Notice was effective

and satisfied Rule 23 and due process, and because the Settlement is an excellent result for

Settlement Class Members that was reached only after years of contentious litigation and a

lengthy period of arms-length, adversarial negotiations.

**A.    The Court-Approved Notice Plan Was Effective and Satisfied Rule 23 and Due Process.**

When a class is certified through settlement, due process and Rule 23 require that the

court "direct notice in a reasonable manner to all class members who would be bound by the

proposal..." Fed. R. Civ. P. 23(e)(1). Notice is "the best notice practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Class notice must clearly state in plain, easily

understood language the details of the proposed settlement, including the nature of the action, the

class definition(s), the claims, and the class members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

Here, following Preliminary Approval, and as ordered, the Parties and the court-appointed Class Administrator, KCC, diligently executed upon the Class Notice plan approved by the Court. (*See* **Exhibit A**, the Declaration of KCC's Jeanne Chernila Re: Notice Procedures attached hereto). On May 11, 2021, KCC received from counsel for Defendants a list of 140,740 transaction records identified as the Settlement Class list. (**Ex. A**, ¶5). The Settlement Class list included telephone numbers, message dates, and message identification tags. On May 14, 2021, KCC removed duplicate telephone number records, and processed the 38,008 unique telephone numbers through Pacific East reverse phone number lookup service to obtain names and addresses on file with the United States Postal Service. A total of 37,523 names and addresses were identified and updated. (**Ex. A**, ¶5).

Thereafter, on June 14, 2021 KCC caused a double postcard containing summary notice and claim form (collectively, the "Notice Packet") to be printed and mailed to the 37,523 complete names and mailing addresses in the Settlement Class list. (**Ex. A**, ¶6). Since mailing the Notice Packets to the Settlement Class Members, KCC has received 5,023 Notice Packets returned by the USPS with undeliverable addresses. (**Ex. A**, ¶7). Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Notice Packets and was able to find updated addresses for 466 Class Members. KCC promptly re-mailed Notice Packets to the found new addresses. (**Ex. A**, ¶7).

Further KCC caused the Summary Notice to be published in the Chicago Tribune on June 8, 2021 and USA Today on June 9, 2021. (**Ex. A**, ¶8). Additionally, on or about June 7, 2021, KCC established the Settlement Website (www.CitizensForRaunerTCPASettlement.com)

dedicated to this matter to provide information to the Settlement Class Members and to answer

frequently asked questions. The Settlement Website's URL was set forth in the Notice Packet,

Summary Notice, and Claim Form. Visitors to the Settlement Website were able to download

copies of the Notice, Claim Form, and other case-related documents. Visitors were also able to

submit claims online, and, if applicable, upload supporting documentation. As of August 24,

2021, the Settlement Website has received 12,891 visits. (**Ex. A**, ¶9).

In addition, KCC established and continues to maintain a toll-free telephone number (1-

855-786-0988) for Settlement Class Members to call and obtain information about the

Settlement, request a Notice Packet, and/or seek assistance from a live operator during regular

business hours. The telephone hotline became operational on June 7, 2021, and is accessible 24

hours a day, 7 days a week. As of August 24, 2021, KCC has received a total of 35 calls to the

telephone hotline and received 12 Notice Packet requests. (**Ex. A**, ¶10).

Additionally, the Settlement Administrator provided notice of the Settlement to the

appropriate state and federal officials pursuant to the Class Action Fairness Act ("CAFA"), 28

U.S.C. § 1715, and no comments or opposition from those governmental entities was received.

(**Ex. A**, ¶¶2-4).

The postmark deadline for Class Members to file Claim Forms in this matter was August

11, 2021, however the Parties' respective counsel agreed to extend the Claim Form filing

deadline to August 17, 2021. To date, KCC has received 9,986 timely-filed Claim Forms and 11

late-filed Claim Forms. Of the 9,986 timely Claim Form submissions, 1,582 have been

conclusively determined to be valid, 879 have been determined to be duplicate submissions, and

7,525 Claim Form submissions are still under KCC's review. KCC expects to complete review

of these remaining 7,525 Claim Forms by August 27, 2021. (**Ex. A**, ¶11).

After KCC has completed its review of the remaining 7,525 Claim Form submissions, any that are determined to be deficient will be provided an opportunity to correct or "cure" their submissions. For known class members included in original data whose Claim Forms were postmarked after the extended filing deadline of August 17, 2021, they will be contacted and asked to provide information regarding when deposit with the U.S. Postal Mail was made. Once claimants have responded to KCC's inquiries, KCC will review all communications and information and make a final determination for all Claim Forms submitted. (**Ex. A**, ¶12).

As such, to date the percentage of Approved Claims Forms (presently 1,582 conclusively determined to be valid) to the total number of unique telephone numbers in the Settlement Class (38,008) results in a 4.16% claims rate. However, as noted above, at the time of this filing KCC has 7,525 timely Claim Forms still under review. As a result, the total claims rate for the settlement can only increase from its present claims rate of 4.16% and could reach as high as approximately 25% of the class, as the remaining Claim Forms are reviewed.

In sum, the robust notice plan that the Court approved with the Preliminary Approval Order and which the Parties and the Class Administrator diligently implemented was the best notice practicable under the circumstances, and it readily satisfies the requirements of due process and Rule 23.

### B. Final Approval of the Settlement is Warranted.

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); see also *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), district courts must nonetheless consider the

following four factors to determine whether a proposed settlement is fair, reasonable and

adequate: (1) the strength of the plaintiff's case compared to the amount of the settlement offer,

(2) the length, complexity, and expense of further litigation, (3) the opinion of competent

counsel, and (4) the stage of the proceedings and amount of discovery completed. See *Synfuel*,

463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199).

Each of these four factors weighs in favor of finding the proposed Settlement fair,

reasonable and adequate, warranting its final approval. This is especially true considering that

none of the Settlement Class members have objected to the Settlement, and none have opted out.

The Court initially determined at the preliminary approval hearing that it appeared that these

factors have been satisfied. [Dkt. 138, ¶ 3]. Nothing has changed in the interim that stands in the

way of final approval.

          **i.**      **The Settlement was reached after discovery, litigation, and arm's length negotiation.**

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the

conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R.

Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are

satisfied the Court may consider "the nature and amount of discovery in this or other cases, or

the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf

of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory

Committee's Note.

This action had been in litigation for over three years before Plaintiff filed his Motion for

Preliminary Approval, and the negotiations that led to the Settlement did not occur until after

substantial legal briefing on the complex and evolving legal issues involved in this action, and

written discovery. The Parties' negotiation did not occur until after significant discovery had been conducted. Accordingly, given that Plaintiff and his counsel had sufficient information about the facts of the allegedly unauthorized calls at issue to fairly weigh the prospects of success at trial versus the negotiated outcome provided by the Settlement, the Court should find that they adequately represented the Class.

> **ii.      In light of the substantial risks and uncertainty associated with continued litigation, the Settlement provides significant benefits to the Settlement Class, and equal relief to all Settlement Class Members.**

The Court is also likely to find that the proposed Settlement satisfies Rule 23's requirements of providing adequate relief when weighed against the likely outcome of any trial on the merits. The Seventh Circuit has found this to be the most important consideration in determining whether a class settlement should be approved. *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The Settlement in this action is an excellent result for the Settlement Class Members and provides significant monetary benefits to the Settlement Class, as every Settlement Class Member who timely submits an Approved Claim Form will receive an equal payment from a Settlement Fund totaling $1 million, less approved fees and expenses. Further, because each Settlement Class Member will receive an equal share of the Settlement Fund, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

In addition, while Plaintiff continues to believe that his claims against Defendants have merit, there are numerous legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv- 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

First, the Supreme Court's 2020 decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020), creates some uncertainty in this action concerning Defendants' liability. *Barr*'s potential retrospective effect on calls during the five-year period between *Barr* and when the government debt exception went into effect in 2015 created risk for the Settlement Class that this action could be dismissed in its entirety. The Settlement fully resolves that risk for the benefit of the Settlement Class.

Second, one of the parties' principal disagreements in this action concerns whether ringless voicemails are subject to the TCPA. Defendants have taken the position that they are not. Though Plaintiff disagrees with Defendants' position and believes it is both legally and factually incorrect, if the Court ultimately agreed with Defendants and granted summary judgment on the ringless voicemail issue, the Settlement Class would be left with nothing.

Third, the Rauner Campaign is an Illinois not-for-profit corporation that was registered as an Illinois political candidate committee to support the Defendant Rauner's Illinois gubernatorial campaigns. Rauner lost his 2018 bid for reelection as Illinois' governor and is not presently a candidate for political office. As such, while the Rauner Campaign continues to exist as an entity, it is no longer active, and its limited remaining assets continue to dwindle as this litigation proceeds. Accordingly, the Settlement Class has financial risk that any victory in this action against the Rauner Campaign would be merely a pyrrhic victory.

Fourth, the Settlement Class has litigation risk that this Court could ultimately grant summary judgment in favor of Rauner on the issue of his vicarious liability for the calls at issue. The Rauner Campaign would be the sole remaining defendant. As noted above, that entity is no longer an active entity, its limited remaining assets continue to dwindle, and it would be unable to satisfy a class-wide judgment against it.

11

Fifth, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. Defendants maintain, among other things, that individual issues among Settlement Class Members would predominate and preclude class certification, including issues of consent. Plaintiff disagrees but acknowledges that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016).

Finally, even if Plaintiff were to obtain class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal. As noted above, a pyrrhic victory for the Settlement Class against the Rauner Campaign at trial is in no one's interest.

Taking these case-specific realities into account, and recognizing the time, expense, and risks involved in any litigation, the Settlement represents an excellent result for the Settlement Class. The total amount of the Settlement Fund, and the payments to participating Settlement Class Members, are significant in light of the substantial legal and financial risks of ongoing litigation. If Defendants were to succeed on their defenses to liability against Plaintiffs' individual claims, or otherwise prevail in opposing class certification, the Settlement Class Members would recover nothing.

Further, the other factors to be considered under Rule 23(e)(2)(C) are also all satisfied here. As detailed above, the Parties prepared and implemented an extensive notice plan that has ensured that Settlement Class Members received effective notice informing them about the Settlement and that has allowed them to readily submit a claim for compensation from the

Settlement Fund. In addition, Class Counsel's requested attorney's fees of one-third of the

$1,000,000 Settlement Fund falls well within the range of attorney's fees award in other similar

settlements and will likely be found reasonable in light of the significant recovery achieved for

the Settlement Class Members and the efforts undertaken by proposed Class Counsel in pursuing

these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii).

In sum, the duration of the litigation; the investigation and discovery process; the

excellent result for the Settlement Class despite the significant procedural and substantive

hurdles faced by Plaintiff; are all testament to the fairness, reasonableness, and adequacy of the

Settlement. Similar class action settlements involving alleged violations of the TCPA have

received final approval in this District and elsewhere.

**C.      The Settlement Class Should Be Certified for Settlement Purposes.**

As more fully described in Plaintiff's Motion for Preliminary Approval, the Settlement

Class fulfills the requirements of Rule 23(a), in that (a) the proposed settlement is so numerous

that joinder of all individual class members is impracticable (numerosity); (b) there are questions

of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are

typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately

protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); In re AT & T, 270

F.R.D. at 340-44.

Further, the requirements of Rule 23(b)(3) are satisfied. Because Plaintiff seeks

certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of

law or fact predominate over questions affecting only individual class members (predominance);

and (b) that a class action is superior to other available methods of resolving the controversy

13

(superiority). Fed. R. Civ. P. 23(b)(3). As more fully described in the Motion for Preliminary Approval, the Settlement satisfies both requirements.

      **D.     The Court Should Also Approve Plaintiffs' Request For Attorney's Fees, Expenses, And Class Representative Incentive Award.**

Because the applicable factors all favor granting final approval of the Settlement, the Court should also approve Plaintiff's requested award of attorney's fees, expenses, and Incentive Award. Plaintiff timely filed his Unopposed Motion for Attorney's Fees, Expenses, and Class Representative Incentive Award (the "Motion for Attorney's Fees") on July 28, 2021 [Dkt. 139] , fourteen days before the August 11, 2021 Opt Out and Objection Deadline. The Class Administrator thereafter posted the Motion for Attorney's Fees on the Settlement Website on July 29, 2021, thirteen days before the Opt Out and Objection Deadline.

Additionally, the notice plan adequately informed Settlement Class Members of the maximum amount of attorney's fees, costs, expenses, and incentive awards that could be sought. Settlement Class Members thus had ample opportunity to consider the merits of Motion for Attorney's Fees and raise any concerns with the amounts requested. No objections to the requested attorney's fees or incentive award were filed, and Class Counsel has not received any correspondence or complaints from Settlement Class Members expressing dissatisfaction with the attorney's fees, expenses, or incentive award sought.

As explained in detail in Plaintiffs' Motion for Attorneys' Fees, Class Counsel's requested fee award is justified given the excellent monetary relief provided under the Settlement and is consistent with Seventh Circuit caselaw regarding attorney's fee awards in class action settlements. Likewise, and as set forth in the Motion for Attorneys' Fees, the requested incentive award for Plaintiff is reasonable in light of his service on behalf of the Settlement Class, without which the Settlement Class Members would have obtained no benefit. Thus, Plaintiff respectfully

14

requests that this Court approve the attorney's fees, expenses and the incentive award requested in the Motion for Attorneys' Fees.

## V.      CONCLUSION

For the foregoing reasons, and for the reasons stated in Motion for Attorney's Fees [Dkt. 139], Plaintiff respectfully requests that the Court enter an Order: (1) finding that the Settlement is fair, reasonable, and adequate; (2) granting final approval of the Settlement; (3) approving Plaintiff's request for attorney's fees, expenses, and the incentive award; and (4) granting such further and additional relief as the Court deems just. A proposed Final Approval Order is attached as **Exhibit B**.

Dated:  August 24, 2021                              Respectfully submitted,


PETER GARVEY individually and on behalf of a class of similarly situated individuals


By: */s/ John Sawin*
        Plaintiff's Attorney

John Sawin (IL 6227112)
SAWIN LAW LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
312.853.2490
jsawin@sawinlawyers.com
*Counsel for Plaintiff and Class Counsel*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on August 24, 2021 I electronically filed the

foregoing ***Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement*** with

the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically

transmitted to all counsel of record.

*/s/ John Sawin*